STATE ex rel. KOHL, Relator, v. DISTRICT COURT et al.,
RESPONDENTS.

(No. 3,252.)

(Submitted November 2, 1912. Decided November 19, 1912.)

[128 Pac. 582.]

*Dismissal of Action—Default Judgment—Failure to Enter—*
*Duty of Court—Duty of Clerk—Directory Statute—Manda-*
*mus.*

Dismissal of Action—Default Judgment—Failure to Enter—Duty of Court
—*Mandamus.*
1.  It is only after verdict, or final submission equivalent thereto, that
a cause may be dismissed for failure to have judgment entered for
more than six months (Rev. Codes, subd. 6, sec. 6714), and since, in
case of a default, final submission has not been reached until formal
entry thereof, therefore, where no such formal entry had been made,
there was no final submission, and *mandamus* does not lie to compel the
district court to dismiss the cause.

Same—Duty of Clerk—Directory Statute.
2.  The provision of subdivision 2 of section 6719, Revised Codes, that
the clerk of the district court must, in the actions therein mentioned,
enter the default of the defendant upon his failure to answer, demur
or appear specially within the time provided by law, is directory, not
mandatory.

Original application by Gus J. Kohl for writ of mandate to
compel the district court of Silver Bow county and one of its
judges to enter an order dismissing a certain cause. Dismissed.

*Messrs. Binnard & Rodger,* for Relator, submitted a brief;
*Mr. Binnard* argued the cause orally.

The burden of prosecuting the action in the district court was
upon the plaintiff, and the defendant was under no duty to do
anything in the action. (*Kubli* v. *Hawkett,* 89 Cal. 638, 27
Pac. 57.) The statute imposes upon the clerk the duty of enter-
ing the default and imposes upon the plaintiff the duty to obtain
a judgment within six (6) months after that time. Now, if the
defendant is under no obligation to act in the matter as held by
the California court and this court (*State* v. *District Court,* 37
Mont. 298, 96 Pac. 337), then the case comes to a termination if
the plaintiff does not obtain the judgment. (*Vrooman* v. *Li Po*
*Tai,* 113 Cal. 302, 45 Pac. 470.) The supreme court of Califor-

nia, passing upon a statute somewhat similar to section 7 of our Act, held that there could be no consent to a continuance of the action, and that the action must be dismissed under the circumstances. Section 2 of the Act now under consideration by the court requires the clerk to enter the default of the defendant, and provides that thereafter the plaintiff shall apply for a judgment in the court. When may the plaintiff apply? Certainly it must be within the six (6) months following.

The law imposes upon the clerk the duty to enter the default. This was for the benefit of the plaintiff. The defendant was entitled to rely on the doing of the duty. He is in no way responsible for the clerk's failure to act. Besides, the clerk's failure to act is of no consequence, since the plaintiff might, at any time within the six months after the time when the clerk should have acted, apply to the court for judgment, and if the court had rendered judgment without any default having been entered by the clerk, the judgment would have been just as valid notwithstanding no default was entered. (*Drake* v. *Duvenick*, 45 Cal. 462.) After the expiration of six months, defendant had the absolute right to have the action dismissed. The fact that he did not ask to have it dismissed implies no negligence on his part, nor does it give rise to any right on the part of the plaintiff or the court in the matter.

It was the duty of the court of its own motion to dismiss for want of prosecution. The situation of the action was that the plaintiff was not entitled after the lapse of time to further prosecute it. It became, as between him and the defendant, as though no action had ever been brought. The failure of the clerk to perform an act which is mandatory compels the court to hold the act to have been performed. It would not justify the plaintiff in claiming that he had gained any right, without the doing of the act, which he would not have secured had the act been done.

The statute under consideration makes no distinction between legal and equitable actions; moreover, equity requires things to be done promptly. It will often refuse relief where a period of

time shorter than the statute of limitations has run, and in instances where, if the matter came before a court of law, it would proceed to judgment.

If, as we contend, it was mandatory on the part of the plaintiff to proceed and obtain judgment, and if the defendant was under no obligation to take any action whatever, then the plaintiff absolutely forfeits his right to the judgment, and the court had no authority to grant it to him. The policy of the law is to speedily terminate actions. We submit that it may not be questioned whether the relator might institute an action in equity to set aside the judgment, or whether he might apply to the court to set aside the default and judgment and allow him to answer, for even though he might do these things, he is not obliged to rely upon them any more than he is obliged to proceed thereon and appeal, rather than apply for a writ of mandate. If the view that this court has taken of the law be correct, and we submit that it is, it would not be in harmony with good reason to contend that, the defendant having failed to answer and the plaintiff having failed to procure the entry of judgment within the time prescribed by law, such judgment was valid.

The defendant might have absolutely no defense to offer, and therefore absolutely no reason to ask the court to set aside the default and judgment, but the law would, notwithstanding his absolute failure to answer and his entire lack of reason to move to set aside the default and judgment, dismiss the action. This right results to the defendant from the law and from the fact that under the circumstances the law deprives the plaintiff of any right to have judgment entered and the court of the authority to enter the judgment.

It is perfectly plain that this court should require the lower court to sustain the motion, and to set aside the default and judgment and dismiss the action as to him. There is no discretion to be exercised. The relator has been denied a right which it was the plain duty of the judge and court to grant him. This court in *State* v. *District Court, supra,* holds that *mandamus* was the proper remedy, and says: ''Where the relator is asking for some-

thing to which he is entitled as a matter of right, we cannot see any reason whatever for denying the relief.''

This court has construed the statute to mean that the court *must* dismiss the action. (*State* v. *District Court,* 30 Mont. 8, 75 Pac. 516.) In *State* v. *Ledwidge,* 27 Mont. 127, 70 Pac. 511, this court by mandate enforced the performance of a duty. The writ will issue whether there is an appeal or not. In this case it is the only direct and complete remedy. The statutes do not make the absence of remedy by appeal a ground for the granting of the writ. (*State* v. *District Court,* 32 Mont. 37, 45, 79 Pac. 546.)

*Messrs. C. F. Kelley, L. O. Evans, W. B. Rodgers,* and *D. Gay. Stivers,* for Respondents, submitted a brief; *Mr. Evans* argued the cause orally.

The judgment entered in *Haggin* v. *Kohl et al.* was a final judgment, and therefore subject to review by this court upon appeal by relator. The order of the lower court made after final judgment denying plaintiff's motion to set aside the default and judgment and to dismiss the cause if the lower court was authorized to consider that upon said action, is and was also appealable as ''a special order made after final judgment.'' The writ of mandate cannot issue where the party applying has a plain, speedy and adequate remedy in the ordinary course of law. (*State* v. *Smith,* 23 Mont. 329, 58 Pac. 867; *State ex rel. Raleigh* v. *District Court,* 24 Mont. 306–315, 81 Am. St. Rep. 431, 61 Pac. 991; *State ex rel. Moshner* v. *Wright,* 26 Mont. 540, 91 Am. St. Rep. 421, 69 Pac. 101; *State ex rel. Harris* v. *District Court,* 27 Mont. 280, 70 Pac. 981; *State ex rel. Beach* v. *District Court,* 29 Mont. 265, 74 Pac. 498; *State ex rel. Breen* v. *Toole,* 32 Mont. 10, 79 Pac. 403; High on Extraordinary Remedies, secs. 9, 10.) A right to review by appeal furnishes a plain remedy in the ordinary course of law, although this remedy may not always be speedy; but the final judgment and order after final judgment complained of in this case, having already been entered, appeal from the judgment or from the order, if any relief could be granted by *mandamus,* would certainly furnish plaintiff a plain,

speedy and adequate remedy to review the action of the lower court complained of.

Relator may cite the decision of this court in the case of *State ex rel. Stiefel* v. *District Court,* 37 Mont. 298, 96 Pac. 337, in support of their contention that *mandamus* is the proper remedy. In that case final judgment had not been entered, and if relator had not been granted the relief by *mandamus,* it was entirely uncertain when a final judgment which would be reviewable on appeal would be entered in the case; and based upon this fact alone, the court held that requiring the relator to wait an uncertain length of time for a judgment to be entered, and then appeal from it, was not affording relator the speedy or adequate remedy contemplated by our statutory provisions upon *mandamus.*

Our statutes, prior to the adoption of the Codes in 1895, contained no provision such as is found in this subdivision 6 of section 6714, section 242 of the Code of Civil Procedure, page 118 of the Compiled Statutes of Montana of 1887, containing merely the first five subdivisions of this section 6714. In 1895 the legislature re-enacted the first five subdivisions of the section as theretofore found in the Compiled Statutes, and added subdivisions 6 and 7 from the Code of California. It is practically the uniform rule, recognized by the courts of all our states, and particularly by many decisions of this court, that the construction placed upon a statute by the highest court of the state from which the statute is taken is entitled to great, if not binding, weight, unless the statute thus interpreted is not suited to the conditions of the borrowing state, or is clearly based upon wrong reasoning. (*Lindley* v. *Davis,* 6 Mont. 453, 13 Pac. 118; *Stadler* v. *First National Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Boston & M. C. C. & S. M. Co.* v. *M. O. P. Co.,* 25 Mont. 41, 63 Pac. 825; *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 613, 64 L. R. A. 128, 74 Pac. 197.) Prior to the borrowing of this subdivision 6 from the California Code, that subdivision had been repeatedly construed by the California courts, and such construction has been by that court followed in a number of later decisions, and that construction was and is that the statute was not intended to be

mandatory, but permissive only, and intended to only vest in the court discretionary power to dismiss or not as the facts should warrant, although the six months period may have long expired. (See *Nehaus* v. *Morgan* (Cal.), 45 Pac. 255; *Rosenthal* v. *Mc-Mann.* 93 Cal. 505, 29 Pac. 121; *In re McDevitt,* 95 Cal. 17, 30 Pac. 101; *Jones* v. *Chalfant* (Cal.), 31 Pac. 257; *Marshall* v. *Taylor,* 97 Cal. 422, 32 Pac. 515; *Rickey Land & Cattle Co.* v. *Glader,* 153 Cal. 180, 94 Pac. 769.) Similar statutes have been construed in other courts to the same effect. (See *Knight* v. *Fisher,* 15 Colo. 176, 25 Pac. 78; *Perkins* v. *Butler,* 42 How. Pr. (N. Y.) 102, 105.) None of these cases appear from the record to have been called to the court's attention in connection with the *Stiefel Case,* and that case appears to have been decided by this court upon the decision of this court in the case of *Montana Ore Purchasing Co.* v. *Lindsay,* 25 Mont. 24, 63 Pac. 715. The situation in the *Lindsay Case* was entirely different from that in the *Stiefel Case.* Under the facts shown in the former, the relator had an absolute right to have a bill of exceptions settled, and, as the court held, had a right to have it settled by Judge Lindsay, the retiring judge.

We submit that the correct view of this subdivision is that taken by the California court and the other courts whose decisions we have above cited, to the effect that it was only intended to leave the matter to the discretion of the court, the dismissal to be ordered only in extreme cases, and especially in cases where it had been shown that some injustice or hardship had been worked by the delay to the party seeking the dismissal.

MR. JUSTICE SMITH delivered the opinion of the court.

Application for a writ of mandate to compel the district court of Silver Bow county and one of its judges to vacate an order heretofore entered refusing to set aside a default and a judgment against the relator, and to enter an order setting aside the default, vacating the judgment and dismissing the action.

The relator's affidavit discloses that in 1894 James B. Haggin began an action against him and others to quiet title to certain

real estate in Silver Bow county. Although relator was duly served with summons on February 20, 1894, he never appeared in the action. On July 5, 1912, the clerk of the district court, on motion of counsel for plaintiff, entered his default, and on the same day the court, also on motion and after a hearing, entered judgment against him in accordance with the prayer of the complaint. On July 22, 1912, relator moved the district court to vacate said judgment and default and dismiss the action, which motion was denied. The issue in this court is made by demurrer to the affidavit and a motion to quash the alternative writ heretofore issued.

On the authority of *State ex rel. Stiefel* v. *District Court,* 37 Mont. 298, 96 Pac. 337, it is contended by relator, (1) that it was the duty of the clerk to enter the default of the defendant in accordance with the provisions of subdivision 2 of section 6719, Revised Codes, and (2) that thereafter it was the duty of the court to dismiss the action after the expiration of more than six months, by virtue of subdivision 6 of section 6714, Revised Codes.

This case is distinguishable from the *Stiefel Case* in this: that Stiefel's default was regularly entered and the court, after the expiration of more than six months from such entry, refused to dismiss the cause as to him; while in the case of *Haggin* v. *Kohl et al.,* with which we are concerned, no default was entered until immediately prior to the entry of judgment.

We think the learned counsel for the relator has failed to grasp the true significance of subdivision 6 of section 6714, Revised Codes, *supra.* It reads as follows: "An action may be dismissed or a judgment of nonsuit entered in the following cases: * * * 6. By the court, when after verdict or final submission, the party entitled to judgment neglects to demand and have the same [1] entered for more than six months." It is only after *verdict or final submission* of a case that it may be dismissed for failure to have judgment entered for more than six months. As was said by Mr. Justice Holloway, for this court, in the *Stiefel Case, supra:* "The words 'final submission' mean a submission which is equivalent to the return of a verdict, or, in other words,

they refer to that state of the case when a judgment may rightly be demanded, as of course." And again: "(Quoting.) A default has practically the same effect as a verdict. Until set aside, it is a final determination of the matters set up in the declaration." Again: "Upon the entry of Stiefel's default, there was a final submission of the case as against him. * * * Under subdivision 6 it was the duty of the plaintiff, within six months *after Stiefel's default was entered,* to demand and have entered the judgment to which plaintiff was entitled. * * * At the expiration of six months from the time *his default* was entered, Stiefel had a right to have the action dismissed as against him." These quotations serve to show the scope and full extent of the holding in the *Stiefel Case.* It is only after verdict or such final submission as is equivalent thereto that a cause may be dismissed for failure for more than six months to enter judgment. And there is a reason for this choice of words. Experience teaches every practicing attorney that there may be many reasons for failure to enter default. The direction to the clerk is by no means mandatory. Let us suppose for the moment that counsel had orally agreed, for a consideration in the way of payments by installments upon an undisputed claim, that default would not be entered for a certain fixed period of time. That is often done. Or suppose counsel were undecided as to whether the complaint should not be amended and a new service made, before asking for entry of a default. Would it be the absolute duty of the clerk to enter default under such circumstances? We think not. In *Edwards* v. *Hellings,* 103 Cal. 204, 37 Pac. 218, the court said: "The provision that the clerk must enter the judgment 'immediately' after entering default is merely directory."

[2] Applying the same principle to this case, we hold that the direction to the clerk to enter the default of the defendant, contained in subdivision 2 of section 6719, Revised Codes, is merely directory. Until a formal default has been entered, the cause has not reached that stage of "final submission" to which subdivision 6 of section 6714 applies. A formal entry of default is notice to the court that the cause is ready for judgment as against the defaulting defendant. Prior to its entry a defendant who has

been regularly served is in an altogether different situation from what he is after his default has been formally noted. As there was no formal entry of default in the *Haggin Case,* there was no such "final submission" as would compel the district court to dismiss it on motion of the relator.

The demurrer to the affidavit is sustained, the alternative writ is quashed, and the proceedings are dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

